IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW J. THOMMEN,

       Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

Case No. 3:12-cv-01625-SI

**OPINION AND ORDER**

Merrill Schneider, Schneider Kerr Law Offices, P.O. Box 14490, Portland, OR 97293. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600 Portland, OR 97201; Jeffrey E. Staples, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Andrew J. Thommen ("Thommen") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is **REVERSED** and **REMANDED** for an award of benefits.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

### A.  The Application

Thommen filed a Title II application for DIB and Title XVI application for SSI on July 28, 2008, alleging disability beginning on February 27, 2006. AR 122-29, 130-36. Thommen is 38 years old, and after the alleged onset date, worked as a gas station attendant pumping gas for five to six months approximately 25 to 30 hours a week. AR 25, 47-48. Other past relevant work includes positions as a hardware store department manager, assistant department manager, and dock worker and material handler. AR 29. Thommen alleges disability due to both physical and mental impairments. The alleged physical impairments include neck and hand pain, a hernia, chronic arm dislocation, and possible stomach cancer and breathing problems. AR 48-49, 365-66. Thommen's alleged mental impairments include anxiety and depression. AR 48-49, 654. The Commissioner denied his application initially and upon reconsideration; thereafter, Thommen requested a hearing before an Administrative Law Judge ("ALJ"). AR 5-15. An administrative hearing was held on November 10, 2010. AR 43. The ALJ found Thommen not to be disabled and ineligible for DIB and SSI. AR 31. Thommen petitioned the Appeals Council for review of the ALJ's decision. AR 15. On July 9, 2012, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the commissioner. AR 1-4. Thommen now seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began his opinion by noting that Thommen met the insured status requirements of the Social Security Act through June 30, 2011. AR 21. Thommen must establish disability on or before that date in order to be entitled to DIB. *Id.* The ALJ then applied the sequential process. AR 21-30. At step one, the ALJ found that Thommen had not engaged in substantial gainful activity after the alleged onset date of February 27, 2006. AR 21. Although Thommen had

engaged in work after his alleged onset date, it was unclear if that work was substantial gainful activity, and thus the ALJ continued with step two of the five step analysis. *Id.* At step two, the ALJ found that Thommen had the following severe impairments: status post cervical fracture, a chronically dislocated shoulder, a hernia, depression, anxiety, and alcohol abuse. *Id.* At step three, the ALJ found that Thommen did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. AR 22-24.

The ALJ then determined that for the period beginning on the alleged onset date of February 27, 2006, Thommen had the RFC to perform less than the full range of light work with the following limitations: "He can lift 20 pounds occasionally and 10 pounds frequently, can sit, stand, and walk without restriction; he should not reach overhead with the right arm, and should not perform more than frequent reaching in all directions with the right upper extremity; and he should not climb ladders, ropes, or scaffolds, and should not crawl. He should not interact with the public but can interact normally with co-workers on a superficial level." AR 24. At step four, the ALJ determined that Thommen was unable to perform any past relevant work. AR 29. At step five, the ALJ found that given Thommen's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that he could perform. AR 30. Thus, the ALJ found Thommen not to be disabled, as defined by the Social Security Act. AR 31.

## STANDARDS

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## DISCUSSION

Thommen seeks review of the determination by the ALJ denying his application for DIB and SSI in the December 2, 2010 written decision. AR 16-37. Thommen argues that the ALJ erred in making the determination by: (1) formulating a deficient RFC; and (2) failing to consider that Thommen does not possess transferable skills to complete semi-skilled work at step five of the sequential analysis.

### A.  Thommen's Residual Functional Capacity

Thommen first argues that the ALJ's RFC determination inadequately accounts for the true functional difficulties he experiences with his right shoulder. In particular, Thommen claims that there are two faults with the ALJ's determination: first, the ALJ improperly incorporated Dr. John Vetto's medical opinion; and second, the ALJ erroneously discounted Thommen's testimony as not credible. Each claim is addressed in turn.

### 1. Dr. Vetto's Medical Opinion

Thommen argues that the ALJ ignored Dr. John Vetto's comment that Thommen should avoid activities which dislocate his shoulder, and as a result, his RFC requires a significantly greater limitation. In evaluating medical opinions as evidence, generally an examining physician's opinion carries more weight than a non-examining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) and 20 C.F.R. § 404.1527(d)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citations omitted).

An ALJ must consider "all of [a claimant's] medically determinable impairments," including "medically determinable impairments that are not 'severe,'" in making an RFC determination. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's findings, however, need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). As the court noted in *Turner*, in order for the RFC to be sufficiently inclusive, the ALJ need only incorporate the medical opinion into the RFC determination. 613 F.3d at 1223. Similarly, in *Valentine*, the court found that the full context of a medical opinion is relevant to determining if an ALJ ignored a limitation. 574 F.3d at 691 (analyzing the entire context of the a reviewing psychologist's opinion to conclude that "simple, paced

(unrushed) tasks" did not exclude the claimant from completing more than just "simple" work given the "more in-depth Mental Residual Functional Capacity Assessment").

Dr. Vetto diagnosed Thommen with "chronic right shoulder dislocation" and stated that the "shoulder is now chronic dislocated to the point where it comes out frequently with minimal strain." AR 652. Dr. Vetto based his diagnosis on objective evidence and his examination of Thommen. *Id.* He also concluded that there was no limit to the number of hours the Thommen could sit, stand, and walk in an eight-hour workday. Dr. Vetto's functional assessment for Thommen was that the "amount of weight the claimant could lift or carry with his left arm is unrestricted." *Id.* Regarding the right arm, Dr. Vetto found that Thommen can lift or carry less than ten pounds. *Id.*

Regarding "postural or manipulative limitations," the ALJ found no limitations "except for those activities which dislocate the right shoulder." AR 652. The ALJ gave significant weight to Dr. Vetto's opinion that Thommen can sit, stand, and walk because it was generally consistent with the record as a whole. AR 28. The medical opinion relating to Thommen's lifting limitations was "given less weight because evidence received at the hearing levels shows claimant is more limited in general in his ability to lift and carry, and less limited than determined by Dr. Vetto in the amount he can occasionally lift and carry on the right." *Id.*

In addition to Dr. Vetto, Thommen was examined by Dr. Amy Cowan in February 2009. AR 746-52. Dr. Cowan diagnosed Thommen with "[r]ight shoulder pain secondary to rotator cuff tear and status post Bankart repair in 2004, now with paresthesias." AR 751. In evaluating the scope of Thommen's daily activities, Dr. Cowan concluded that he could "do all of his own activities of daily living including cleaning, cooking, and yard work as long as he does not do anything overhead." AR 747-48. With regard to lifting and carrying, Dr. Cowan found no

limitation on the left, and that Thommen "should not lift more than 10 pounds occasionally and frequently on the right." AR 752. The ALJ gave significant weight to Dr. Cowan's conclusion that Thommen cannot reach overhead, but Dr. Cowan's opinion regarding Thommen's lifting limitations was given less eight as it was not "completely clear." AR 27. The ALJ reasoned that "[e]vidence in the file and received at the hearing, including claimant's subjective reporting of systems, shows that claimant is more limited generally in his ability to lift and carry, but can lift and carry 20 pounds occasionally." *Id.*

Reading Dr. Vetto's medical opinion in context, the comment "except for those activities which dislocate the right shoulder," related to potential "postural or manipulative limitations" and cross-referenced the right arm limitations previously noted. AR 652. In this case, the ALJ properly considered Dr. Vetto's opinion. Included in the RFC are the following postural and manipulative limitations: "he should not reach overhead with the right arm, and should not perform more than frequent reaching in all directions with the right upper extremity; and he should not climb ladders, ropes, or scaffolds, and should not crawl." AR 24. Dr. Vetto's qualified statement regarding postural and manipulative limitations should not be read so broadly as to encompass additional limitations not mentioned in his report. Because the ALJ did not exclude any specific limitations listed in Dr. Vetto's opinion, the RFC formulation was consistent with relevant medical opinion. *See Turner*, 613 F.3d at 1222-23.

## 2. Thommen's Credibility

Thommen argues that the ALJ discredited his testimony without providing clear and convincing reasons for doing so. Pl's Br. at 8-12. The Court finds that Thommen's testimony is consistent with medical evidence in the record and that the ALJ failed to provide specific, clear, and convincing reasons to reject Thommen's testimony. Therefore, the Court reverses the ALJ's determination that Thommen's testimony was not fully credible.

### a.  Legal Standards

The Ninth Circuit has consistently held that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citation and internal quotation marks omitted); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985). "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). Although the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities, *see Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), the ALJ's credibility findings must be supported by specific, cogent reasons. S*ee Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, *available at* 1996 WL 374186.

Further, an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### b.   The ALJ's Credibility Analysis

At issue in this case is the ALJ's discounting of Thommen's subjective testimony regarding the use of his right arm. The ALJ found Thommen's testimony incredible for several reasons: (1) Thommen's statements were inconsistent with his daily activities; (2) Thommen's testimony was inconsistent with his past work; and (3) Thommen's testimony regarding the inability to relocate his shoulder after dislocation was inconsistent with medical findings. AR 25. Thommen challenges this credibility determination.

### i.   Activities of Daily Living

The ALJ found Thommen incredible because "the evidence in record reflects the claimant's functional limitations are not as significant and limiting as he alleges." AR 25. A claimant's daily activities can form the basis of an adverse credibility determination in two circumstances: first, where the activities contradict other testimony, and second, where the activities meet the threshold for transferable skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v. Astrue*, No. 3:110-cv-00475-AC, 2012 WL 3922151, at *4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v. Astrue*, No. 3:11-cv-01066-SI, 2012 WL 4210508, at *6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

The ALJ did not discuss the transferability of Thommen's skills. Thus, the only basis to uphold the ALJ's credibility finding is if Thommen's daily activities are inconsistent with his argument that limited use of his right arm renders him unable to work a full-time position. Because the ALJ's did not provide specific, clear and convincing reasons to reject Thommen's testimony, the ALJ's decision was in error.

At the hearing, Thommen testified that he is able engage in activities like "vacuuming, clean[ing] [off] the mirrors, all that." AR 60. He explained that he must take breaks to ensure his right arm is still in the socket. *Id.* He also stated that it "takes me quite a while because I can only use one hand," and with regard to vacuuming, he is "only able to use his left hand on that." AR 61. The ALJ first evaluated evidence of Thommen's daily activities from 2007, after the alleged disability onset date, through 2010. In particular, the ALJ found that in 2007, Thommen "watched television, visited family and friends, shopped weekly, drove, and did dishes and laundry, although he had some difficulty with chores, dressing and bathing due to his right arm." AR 25. The evidence from 2007 was based a physchodiagnostic evaluation completed by Dr. John D. Alder, a licensed psychologist. AR 654. Thommen reported to Dr. Alder that he has "problems with chores due to [his] right harm," and has "problems with dressing and bathing due to his arm." AR 655. None of the statements Thommen made to Dr. Alder support the conclusion that Thommen can use his right arm frequently. Thommen did not report to Dr. Alder that he used his right arm to complete any of the listed daily activities and instead, only stated that his right arm was a hindrance to him. This evidence does not provide a specific, clear and convincing reason to find Thommen incredible.

The ALJ also looked to a function report completed by Thommen from 2008, where Thommen reported that he could "prepare simple meals, shop for food and go to the movies with his son." AR 25. Thommen reported that in addition to those daily activities he cannot lift more than ten pounds, cannot reach over head or reach out in front of him, and generally cannot use his right arm. AR 208. Like the evidence in 2007, this evidence in fact buttresses Thommen's disability claim because he stated that he could not use his right arm. The fact that he can complete these simple daily activities using only his left arm does not demonstrate that his limitations to his right arm were not as significant and limiting as Thommen alleged.

In 2009, the ALJ concluded that Thommen "reported he could perform all activities of daily living including cleaning, cooking and yard work as long as he did not have to do anything overhead." AR 25. The ALJ's conclusion was based on a report completed by Dr. Cowan. Dr. Cowan concluded that Thommen's maximum lifting and carrying capacity limitations were: no limitations on the left and that Thommen "should not lift more than 10 pounds occasional and frequently on the right." AR 752. The primary limitation that Thommen gave to Dr. Cowan was that he "unable to do any overhead activities." AR 747. The ALJ gave little weight to this portion of Dr. Cowan's opinion because stating that lifting could be done both "occasionally and frequently" is not entirely clear. AR 27. Dr. Cowan's report of Thommen's daily activities also fails to establish what use, if any, Thommen makes of his right arm. Such an ambiguous reference to minimal household activities is neither a specific nor a convincing reason to discredit Thommen's testimony. Moreover, the "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from" a claimant's credibility. *Vertigan*, 260 F.3d at 1050 (A claimant may engage in activities "despite pain for therapeutic reasons, but

that does not mean [he] could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.").

Finally the ALJ concluded that in 2010, Thommen was able to attend five AA meetings a week. AR 25. This was based on Thommen's statement to Clackamas County Mental Health for an individualized treatment plan. AR 816. Evidence of daily activities, such as driving a car and attending a therapeutic session, is not evidence that Thommen can successfully engage in full-time work. *See Vertigan*, 260 F.3d at 1050. The ALJ only cited, at most, a scintilla of evidence, as compared to the clear and consistent statements from Thommen that he is not able to use his right arm, to support the ultimate credibility finding.

Thommen argues that he can make no use of his right arm. His statements reflect that that he is careful about using his right arm during limited daily activities, particularly with regard to heavy lifting or potential impact. AR 60-61. He stated that during the completion of daily activities, "I can only use my left hand." AR 60. He often needs to stop halfway through small chores to "make sure [his] arm is in" because "it slowly comes out sometimes." *Id.* The care he takes in completing these chores means that it "takes [him] quite a while" to complete those activities. *Id.* Thommen also cites to the statements documented in the Social Security Administration Function Report to show that he uses primarily his left arm. There he explained that he "uses only [his] left arm to lift heavy items." AR 225. He also stated that for projects that require two hands, he usually receives help from his father. *Id.* Later in the report, he explains that he "uses only [his] left arm for lifting [and] reaching, can't lift anything over 2-3 pounds with his right arm." AR 228. Although this statement demonstrates that Thommen has limited use of his arm for daily activities, it does not demonstrate that he is capable of using it more than sporadically.

As a final matter, the other medical evidence in the record is not sufficient to discredit Thommen's testimony. Dr. Vetto's medical opinion provides that Thommen "has chronic right shoulder dislocation and the shoulder is now chronic[ally] dislocated to the point where it comes out frequently with minimal strain." AR 652. Dr. Vetto's diagnosis was based on "objective evidence" that corroborates Thommen's medical history. *Id.* When providing his functional assessment, Dr. Vetto did not specify the frequency with which he could lift weight with his right arm. AR 652. At best, his explanation of Thommen's ability to use his arm was ambiguous, and thus cannot provide a specific reason for finding Thommen incredible.

The ALJ also relied on two state agency consultant opinions, which merely reviewed, *inter alia*, the medical evidence cited above to conclude that Thommen was not disabled. AR 703-10, 754-61. At best, these reports do not directly address Thommen's limitations, and more accurately, reinforce that use of his right arm is limited. *See* AR 706 (stating that Thommen's "right shoulder reaching [is] limited to occasional shoulder level"); AR 757 (stating that Thommen "should limit activities requiring overhead reach to occasional in [right] arm only"). Relying on these two non-examining consultant opinions, however, does not provide a specific, clear, and convincing reason to discredit Thommen. These two opinions provided nothing more than "checked boxes without . . . supporting explanations." *Holohan*, 246 F.3d at 1207; *see also See Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

The relevant medical records, Thommen's testimony, and written statements from Thommen evidence that he has serious difficulty using his right arm. Even if there was no support for Thommen's symptom testimony in the record, the ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by

objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ has failed to provide specific, clear, and convincing reasons for discrediting Thommen's testimony. *See Vasquez*, 572 F.3d at 591.

### ii.  Past Work

Next, Thommen argues that his shoulder testimony is not contradicted by his decision to look for work after his alleged onset date. Pl.'s Br. at 9. Thommen argues that he failed to find work with his shoulder injury, and the attempt to find work should not be held against him. There is not substantial evidence in the record supporting the ALJ's finding that Thommen's past work history detracts from his credibility.

The Commissioner concedes, and the Court agrees, that any testimony regarding Thommen's abilities before his alleged onset of disability cannot be a basis to undermine Thommen's credibility. The majority of the evidence the ALJ cited relates to Thommen's work related activities before his alleged disability onset date. The only post-onset employment activity the ALJ considered was that Thommen worked pumping gas for five to six months about 25 to 30 hours a week. AR 25. The ALJ concluded that this testimony shows "some capacity to work." *Id.*

Thommen's position as a gas station attendant does not constitute a clear, specific, and convincing reason to find that Thommen's testimony lacks credibility. *See Lingenfelter*, 504 F.3d at 1036. Thommen testified that he held the position because a friend was trying to help him out, but that ultimately, he was unable to complete the duties of that position. AR 48. Once Thommen's right shoulder would dislocate, there being no other attendants on duty at the gas station, he would shut down the gas station for periods of time until he was again able to help a customer. *Id.* He was ultimately let go from position because he could not perform the required job functions. *Id.* During the hearing, Thommen did not testify that he used his right arm

frequently while trying to work as a gas station attendant. The ALJ did not explain why Thommen's failure to hold this position evidenced a capacity to use his right arm, even if it did show that Thommen had a desire to work.

In sum, the ALJ's reliance on Thommen's past work history does not provide a clear and convincing reason supported by substantial evidence to discount Thommen's testimony.

### iii.  Shoulder Relocation Medical Evidence

As a final matter, Thommen argues that the ALJ erroneously concluded that Thommen is able to relocate his right shoulder "fairly easily." AR 25. Thommen contends that the only record cited by the ALJ does not support this conclusion. Thommen cites to his testimony on this issue that he can usually relocate his shoulder within 30 minutes to two hours. AR 49.

Thommen explained that relocation of his right shoulder can take 30 minutes to two hours. In particular, he said that relocation is based on how bad the shoulder dislocates. *Id.* The ALJ turned to medical evidence to assess Thommen's abilities in this regard. The ALJ cited to Dr. Cowan's report from 2009. AR 746. Dr. Cowan noted that Thommen is "able to relocate his shoulder." *Id.* Immediately before this statement, however, Dr. Cowen documented that Thommen was "frequently dislocating, particularly in his sleep." *Id.* She also noted that Thommen "complained of . . . chronic pain in that shoulder, especially with use." AR 746. Dr. Cowan further explained that Thommen is "unable to do any overhead activities." *Id.*

Thommen's testimony, and the examining physician's medical opinion on this issue, are contrary to the ALJ's conclusion that Thommen can "relocate his shoulder fairly easily." AR 25. Dr. Cowan's report instead documents that Thommen's shoulder is easily dislocated, and that Thommen is able to relocate the shoulder himself without visiting an emergency room. AR 746-47. This evidence, however, does not support that the dislocation and relocation of Thommen's right shoulder is painless or an insignificant barrier to Thommen seeking full-time work. An

ALJ's credibility determination is supported by substantial evidence where the claimant's testimony is "inconsistent with other medical evidence in the record." *Molina*, 674 F.3d at 1113. Here, Dr. Cowan did not discount Thommen's complaint of chronic pain or Thommen's assertion that the pain in his right shoulder has worsened over time. AR 746. Thommen's testimony makes clear that he may be able to make minimal use of his right arm. Therefore, the ALJ's reliance on this portion from Dr. Cowan's report is not a clear, convincing and specific reason to discount Thommen's testimony.

### iv. Conclusion

The ALJ has not articulated specific, clear and convincing reasons for discrediting Thommen's testimony as to the right shoulder symptoms he identifies as work-disabling.

## B. Thommen's Ability to Complete Semi-Skilled Work in the National Economy

Thommen argues that ALJ's analysis at step five of the sequential analysis was in error because the ALJ failed to make a finding of transferable skills before concluding that Thommen can complete semi-skilled work. Pl.'s Br. at 13. At step five, the ALJ determined that "[t]ransferability of job skills is not material to the determination of disability." AR 30. Thommen argues that the failure to consider transferability of his skills renders the ALJ's decision erroneous.

At step five, the burden shifts to the Commissioner to show that there exists work in significant numbers in the national economy that Thommen can perform. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the ALJ relies on a vocational expert ("VE") to meet this burden, the questions to the VE must be based on substantial evidence and may exclude limitations unsupported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ can meet the Commissioner's burden under step five either through use of the Medical-Vocational Guidelines or with a VE. *See Wilson v. Astrue*, 752 F. Supp. 2d 1146, 1152 (D. Or.

2010). The ALJ "may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss*, 427 F.3d at 1218. VE testimony is not supported by substantial evidence, however, if it is based on a defective RFC determination. *Valentine*, 574 F.3d at 690.

The Medical-Vocational Guidelines can only be used when they "accurately and completely describe the claimant's abilities and limitations." *Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (quoting *Tackett*, 180 F.3d at 1102). "In other words, a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work." *Tackett*, 180 F.3d at 1101. The types of non-exertional limitations that make reliance on the Medical-Vocational Guidelines improper include "pain, postural limitations, or environmental limitations." *Id.* at 1102. Where "mechanical application of the Medical-Vocational Guidelines" is inappropriate, an ALJ is "*required* to take the testimony of a vocational expert." *Id.* at 1104; *See also* 20 C.F.R. Part 30, Subpt. P, App. 2, § 200.00(b).

At step five in this case, the ALJ found that Thommen could perform other jobs existing in the national economy. AR 30. In making this determination, the ALJ consulted the Medical-Vocational Guidelines corresponding to Thommen's age, education, work experience, and RFC. *Id.* The ALJ concluded that Thommen's "ability to perform all or substantially all the requirements of [light work] has been impeded by additional limitations." *Id.* Because the ALJ found that Thommen could not perform all work at the light level, ALJ was required to make his determination at step five using a VE. *See Tackett*, 180 F.3d at 1104.

Thommen argues that at this point in the ALJ's analysis, Social Security Ruling 82-41 required the ALJ to make a specific finding about any transferable jobs skills Thommen may have obtained. *See* Soc. Sec. R. 82-41, *available at* 1982 WL 31389, at *1. The rule makes clear,

however, that transferability of work is only relevant "when the table rules in Appendix 2 [the

Medical-Vocational Guidelines] are applicable to a case . . . because, even if it is determined that

there are no transferable skills, a finding of 'not disabled' may be based on the ability to do

unskilled work." *Id.* Accordingly, the Medical-Vocational Guidelines are only used as a

framework. Further, an assessment of transferable skills itself is *only* required where the

Medical-Vocational Guidelines are applicable—here the ALJ was required to rely on the

testimony of a VE. When the these Rules do not direct a specific finding, "full consideration

must be given to all of the relevant facts in the case . . . which will provide insight into the

adjudicative weight to be accorded each factor." 20 C.F.R. § 404 app. 2 § 200.00(e)(2).

Because the Medical-Vocational Rules did not direct a specific conclusion, the ALJ

proceeded to ask the VE whether jobs existed for an individual with Thommen's RFC, age,

education, and work experience. AR 64. The VE testified that given the RFC identified by the

ALJ, Thommen would be able to perform light work, semi-skilled as a security guard. AR 65.

The VE identified a second possibility for Thommen to work as a food assembler, which is also

considered light work and semi-skilled. *Id.* In the final hypothetical the ALJ posed to the VE, the

ALJ asked whether a limit on reaching in all directions with the right hand to "less than

frequent" would eliminate the jobs previously identified by the VE. AR 65. The VE testified: "It

would eliminate those jobs, your honor." AR 65. As discussed above, the ALJ improperly

rejected Thommen's symptom testimony that he is unable to use is right arm frequently. Had the

ALJ properly credited Thommen's testimony, the RFC and the VE's hypothetical would have

included a limitation that Thommen is unable to use his right arm frequently.

If the hypothetical posed to the VE does not reflect all of the claimant's properly

supported limitations, the VE's opinion lack's evidentiary value. *Matthews v. Shalala*, 10 F.3d

678 (9th Cir. 1993). In this case, the VE testimony lacked evidentiary value because it was based

on a hypothetical that did not include Thommen's limitation on the use of his right arm. At step

five of the sequential analysis, the burden shifts to the Commissioner to prove that jobs exist in

significant numbers in the national economy that Thommen can perform. *See Yuckert*, 482 U.S.

at 141-42. Here, the ALJ relied on the VE's testimony to conclude that the Commissioner had

met its burden. Because the ALJ's conclusion relied on a VE opinion that lacked evidentiary

value, the ALJ's finding of no disability at step five of the sequential analysis was not supported

by substantial evidence.

## C.  Remand for Benefits

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by

further administrative proceedings or when the record has been fully developed and the evidence

is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138

(9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may

not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a

claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award

of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for

rejecting such evidence; (2) there are no outstanding issues that must be resolved before a

determination of disability can be made; and (3) it is clear from the record that the ALJ would be

required to find the claimant disabled were such evidence credited. *Id.* (quoting *Benecke*, 379

F.3d at 593). The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves

the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (citation and internal quotation marks omitted).

As explained above, the ALJ failed to provide legally sufficient reasons for rejecting Thommen's symptom testimony regarding the use of his right arm. Had Thommen's testimony been properly credited, Thommen's RFC would have included a limitation that Thommen is unable to use his right arm frequently. Based on the ALJ's final hypothetical to the VE, if Thommen's use of his right arm is less than frequent there would be no jobs in the national economy that Thommen can perform. AR 65.  Based on this finding, the record shows that properly crediting Thommen's testimony requires a finding of disability. The record in this case is fully developed and there are no outstanding issues to resolve.

## CONCLUSION

The Commissioner's decision that Thommen is not disabled is **REVERSED** and this case is **REMANDED** for an award of benefits.

**IT IS SO ORDERED**.

DATED this 29th day of October, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge